STILLWELL, Sheriff, et al. vs. OLIVER.

INJUNCTION : *None against execution sale of chattels.*

A bill in equity will not lie to restrain the sale of chattels under execution, unless it shows that some damage will result to the plaintiff not fully remediable at law.

APPEAL from *Arkansas* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Circuit Judge.

*Halliburton,* for appellant.

EAKIN, J. On the fourth of March, 1868, E. Lockett executed to M. A. Lockett a writing obligatory for $11,834.,25 payable at twenty months, with interest; and at the same time, to secure the payment, executed to the payee a conveyance of certain lands in Arkansas county, "together with all stock of every description, farming implements, tools, wagons, drays, carts, etc." The context sufficiently shows, that the personalty intended was all which was used upon, and considered as belonging to the place. The conveyance was to be void on payment. It was duly filed for record on the twentieth of April, 1868. A small credit of $200 appears indorsed upon the note, of March 26, (year not given), after which the name of M. A. Lockett is

indorsed in blank. There is no formal assignment of the mortgage.

On the second of July, 1875, R. T. Oliver applied to the county judge for an interlocutory injunction, presenting this complaint, in which he sets forth the note and mortgage, and claims to be the legal owner, by assignment. He further says that he had instituted suit in the circuit court in chancery, on the seventeenth of May, for foreclosure, which suit is still pending.

Amongst charges against the administrator of E. Lockett not involved in the appeal, he complains that defendant, James Marks, on the seventeenth day of June, 1870, sued E. Lockett by attachment, in said court, upon a note, which attachment was levied upon a portion of the personal property included in the mortgage, consisting of certain mules and oxen, which were bonded by E. Lockett and the attachment released. At the November term, judgment in that suit was rendered against Lockett, and the property which had been attached was condemned to be sold. An execution, issued upon this on the eighteenth of May, 1871, was returned, not executed. An alias, issued in 1872, was levied on a portion of the mortgaged property, but not returned. Another, issued on the second of June, 1875, in E. Lockett's lifetime, was, on the third of June, after his death, levied on three mules, three oxen and a government wagon—a portion of the mortgaged property—but different, as complainant says, from the property attached. He charges that defendant, Stillwell, as sheriff, has advertised and is about to sell the property last taken in execution.

Defendant, Parker, is the administrator of E. Lockett, and is about to proceed to sell the mortgaged effects a part of his intestate's estate, under order of the probate

court.   The bill seeks to enjoin these sales, and general relief.

The county judge directed the injunction to issue, as prayed; but the writ, as issued by the clerk, restrained the sheriff, alone.   Parker was allowed to proceed and sell personal property of the estate, not embraced in the mortgage.

A demurrer to the bill was overruled, to which defendants excepted; and Marks, alone, answered.

He denied that the mortgage had been assigned to complainant, and relies upon the attachment and judgment of the circuit court in 1870, by which the attached property was ordered to be sold.   He says that in 1872 he had execution issued against the attached property so condemned; upon which the sheriff took into his possession "certain" of it, and advertised it for sale.   That M. A. Lockett sued for it in replevin before a justice of the peace, and upon trial said property was adjudged to be that of E. Lockett, and liable to the execution, which judgment was affirmed on appeal to the circuit court; all of which was before any assignment of the mortgage to complainant.   Further, that on the second of June, 1875, he caused an alias execution to issue, for the seizure and sale of the attached property, which was levied on the said property, together with some other.   He prays that the injunction be dissolved, and that the property be re-delivered to the sheriff, to be sold under the execution.

A demurrer to the answer was overruled.

Pending the suit it was, by consent, ordered that the property in the sheriff's hands be sold, and the proceeds held.

The cause was heard upon the bill, answer and exhibits, and the Chancellor decreed that the injunction be made perpetual.   Defendants appealed.

Stillwell, Sheriff, et al. vs. Oliver.

The personal property in the mortgage was described with sufficient certainty. It was capable of identification, so as, at least, to bind the mortgagor, or his general creditors. They can not have greater rights than he could have himself asserted. It might have been different with respect to *bona-fide* purchasers for value of any part of the mortgaged property, without notice that it constituted a portion of the property on the place when the mortgage was made; or with respect to subsequent mortgagees without such notice, advancing a new and valuable consideration.

The grounds, however, for equitable interference by injunction, upon an independent bill are not clear. The mortgagee, or the assignee of the debt, which carried the mortgage with it, had the right, on default, to take possession of the property, or foreclose. He adopted the latter course, and whilst the suit was pending might, upon proper application, have had a receiver in that suit, and a restraining order against the sheriff, or any one seeking to take the property by execution. There was no necessity for a distinct bill, nor valid grounds for one, without showing some irreparable mischief from the levy and sale, for which ordinary legal remedies would be inadequate.

The universal jurisdiction which courts of equity assume in matters of trust is directed to their honest enforcement between trustees and *cestuis que trustent*, and the protection of their mutual equities. Generally, a trustee with legal title is left, as against strangers, to the usual legal remedies to recover or protect the property. Courts of equity, on his application, will interfere to protect the trust property against tort-feasors, and save it from waste and loss, on the same grounds that it would protect that of claimants in their own right—not mainly because there is a trustee in

*INJUNCTION None against execution sale of chattels.*

the case, but upon the ground of threatened mischief, for which there would be no other full, complete and adequate remedy.    Equity, for instance, will not aid in getting in property held adversely by strangers to the trust, and for which the trustee might resort to the ordinary Code remedies, analogous to the common law actions of replevin, trover, detinue, debt, trespass, or case.    This court held in *Lovette v. Longmire, 14 Ark., 339,* that the sale under execution of a slave, levied on as the property of another, would not be enjoined, where there was no allegation that they would thereby be placed beyond the reach of the law, nor anything to show that the true owner would be deprived of a full and adequate redress at law against the purchaser. This doctrine had never been applied, however, to articles having peculiar value, or *pretium affectionis,* and so much of the decision as applied to slaves, was afterwards overruled in *Sanders v. Sanders, 20 Ark., 610,* upon the express ground of the peculiar nature of slave property—as to which there, often, might be affections and predilections to gratify, and always were duties to be performed by the master which entitled him to protection against improper seizure and sale.    The general principle as to personal property was, however, reasserted as well established, that a bill in equity will not ordinarily lie to prevent the sale of chattels under execution, because, by a suit at law, a full compensation may be obtained in damages.    Although the exceptions have been extended in other cases with a considerable degree of liberality, it has always been subject to the pervading idea that equity will not interfere for the protection of chattels, unless it should appear that in case of a sale, removal, destruction, or damage, an injury would result to the owner for which the remedy at law would not be full, complete and adequate.

Stillwell, Sheriff, et al. vs. Oliver.

In this case, complainant did not take possession of the mortgage property on default; nor, in his bill to foreclose, ask a receiver. The presumption arises that he relied upon the land as sufficient, or else that he was willing to trust the mortgagor with the possession. Subject to the lien of the mortgage, the property continued to belong to the mortgagor, and whether or not his interest in it, whilst accompanied by possession, was subject to seizure and sale under execution, it is clear that such sale would not divest the mortgagee's title, or *right* of possession; which would be as effective at law against the purchaser as it was against the mortgagor, whose interest the purchaser would take, and there is no occasion for equitable interference, unless it be shown that some damage would result to the mortgagee, not fully remediable at law.

None is alleged, nor to be fairly inferred. The court can not cast about to imagine probable injuries. The mortgagee has voluntarily left the property for a long time in the owner's hands for his use, and declined to ask a receiver on filing his bill for foreclosure. He does not now express apprehension of the loss of his debt, and asks only that the sale may be enjoined, and the property remain in the former plight. The bill lacks equity, and the demurrer should have been sustained.

The defendant, Marks, did not rest, but answered; and, pending the suit, consented to an order which made it proper for the court to retain the suit to dispose of the proceeds of the sale. He asks specifically that the injunction be dissolved, and that he have further relief, without making his answer a cross-bill. The principal point relied upon in his answer is, that the title to the property had been adjudicated in a replevin suit between the same parties or their privies.

This would have been a good defense, if the magistrate had jurisdiction. The exhibits show the affidavit upon which the writ of replevin issued, from which it appears that the property exceeded $500 in value. Under the Constitution then in force, the magistrate had no jurisdiction, and the proceedings were void, and could not be affirmed on appeal.

After the sale by consent, there could be no further question of an injunction against it. Everything passed out of consideration save the disposition of the fund and the adjustment of costs. Both the answer and bill prayed general relief, under which the court should have itself devised the most equitable scheme to get rid of the fund in court. There was pending, a suit for foreclosure, and it was evident that the mortgagee's lien was prior to the attachment. Also apparent that Marks was entitled to the benefits of his execution, subject to the lien. The readiest solution of the difficulty would have been to retain the fund, consolidate the cases, foreclose the mortgage, pay the mortgage, and let in the execution creditor upon the balance. If that be no longer convenient, some equitable disposition of the fund should be made. It was error to neglect this, and perpetuate an injunction, which the consent of the parties had already rendered futile.

Reverse the decree, and remand the cause for further proceedings consistent with equity and this opinion.